1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  RAUL CAIZ,                        )   CV No. 15-09044-RSWL-
                                      )   AGRx
13             Plaintiff,             )
                                      )
14             v.                     )   **ORDER Re: DEFENDANTS'**
                                      )   **MOTION FOR SUMMARY**
15  WILLIAM LEONARD ROBERTS II,       )   **JUDGMENT [44]**
    aka MASTERMIND aka RICK           )
16  ROSS, UNIVERSAL MUSIC             )
    GROUP, INC., DEF JAM              )
17  RECORDS, INC., MAYBACH            )
    MUSIC GROUP, LLC,                 )
18                                    )
                                      )
19             Defendants.            )
                                      )
20  _____ )

21                     **I. INTRODUCTION**

22      Currently before the Court is Defendants William

23  Leonard Roberts II aka Mastermind aka Rick Ross

24  ("Roberts"), Universal Music Group, Inc. ("Universal"),

25  Def Jam Records, Inc., ("Def Jam"), and Maybach Music

26  Group, LLC's ("Maybach") (collectively, "Defendants")

27  Motion for Summary Judgment [44].  The Court, having

28  reviewed all papers and arguments submitted pertaining

to this Motion, **NOW FINDS AND RULES AS FOLLOWS:**
Defendants' Motion for Summary Judgment [44] is
**GRANTED.**

## II. BACKGROUND

**A. <u>Factual Background</u>**

Plaintiff's claims against Defendants include
Federal Trademark Infringement pursuant to 15 U.S.C. §
1114, a violation of the Lanham Act, 15 U.S.C. §
1125(a), Federal Trademark Dilution, Unfair Enrichment,
Unfair Competition, and Misappropriation.  Compl. ¶¶
39-65.  Plaintiff is a hip-hop music artist.  <u>Id.</u> at ¶
2.  Plaintiff owns the trademark rights to
"Mastermind."  <u>Id.</u>  Roberts is also a hip-hop artist.
<u>Id.</u> at ¶ 3.  Plaintiff alleges Defendants have wilfully
infringed on Plaintiff's trademark rights by releasing
an album entitled "Mastermind," titling Roberts' tour
"Mastermind," and Roberts taking on the persona of
"Mastermind," causing confusion in the marketplace.
<u>Id.</u>  Defendants filed a Counterclaim of cancellation of
the federal trademark registration under 28 U.S.C. §
2201(a) and 15 U.S.C. §§ 1119, 1064.  Counterclaim ¶ 5.
Defendants allege the "Mastermind" mark is invalid
because it is a generic and/or merely descriptive term
that has not acquired a secondary meaning and Plaintiff
has abandoned the mark.  <u>Id.</u> at ¶ 12.

**B.  <u>Procedural Background</u>**

On November 20, 2015, Plaintiff filed a Complaint
in this Court [1].  On February 16, 2016, Defendants

filed an Answer [18].  On February 18, 2016, Defendants filed a Counterclaim against Plaintiff [22].  On March 8, 2016, Plaintiff filed an Answer to the Counterclaim [23].  On October 7, 2016, Defendants filed the instant Motion for Summary Judgment along with a Statement of Undisputed Facts and Conclusions of Law [44][45].  On October 7, 2016, Defendants also filed a Request for Judicial Notice [46].  On October 18, 2016, Plaintiff filed an Opposition to the Motion for Summary Judgment along with a Statement of Disputed Facts and an Opposition to Defendants' Statement of Undisputed Facts [52].  On October 25, 2016, Defendants filed a Reply [53].

### III. DISCUSSION

**A.  <u>Legal Standard</u>**

   1.  <u>Motion for Summary Judgment</u>

   Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in the light most

favorable to the opposing party. <u>Twentieth Century-Fox</u>
<u>Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1329 (9th Cir.
1983). In ruling on a motion for summary judgment, the
court's function is not to weigh the evidence, but only
to determine if a genuine issue of material fact
exists. <u>Anderson</u>, 477 U.S. at 255.

Under Rule 56, the party moving for summary
judgment has the initial burden to show "no genuine
dispute as to any material fact." Fed. R. Civ. P.
56(a); <u>see</u> <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>,
210 F.3d 1099, 1102-03 (9th Cir. 2000). The burden
then shifts to the non-moving party to produce
admissible evidence showing a triable issue of fact.
<u>Nissan Fire & Marine Ins.</u>, 210 F.3d at 1102-03; <u>see</u>
Fed. R. Civ. P. 56(a). When a defendant moves for
summary judgment, summary judgment "is appropriate when
the plaintiff fails to make a showing sufficient to
establish the existence of an element essential to
[their] case, and on which [they] will bear the burden
of proof at trial." <u>Cleveland v. Policy Mgmt. Sys.</u>
<u>Corp.</u>, 526 U.S. 795, 805-06 (1999); <u>Celotex Corp. v.</u>
<u>Catrett</u>, 477 U.S. 317, 322 (1986).

The standard for a motion for summary judgment
"provides that the mere existence of *some* alleged
factual dispute between the parties will not defeat an
otherwise properly supported motion for summary
judgement; the requirement is that there be no *genuine*
issues of *material* fact." <u>Anderson</u>, 477 U.S. at 247-

4

48.

**B. <u>Findings of Fact</u>**

1.  Plaintiff owns a federal registration in the
    trademark "Mastermind."  Plaintiff applied for
    registration on December 24, 2005 and the
    registration was approved on July 16, 2013 in
    Classes 009 and 41, Registration No. 4,366,332.
    Defs.' Statement of Undisputed Facts ¶ 1; Compl. ¶
    25.

2.  Class 009 consists of: audio recordings featuring
    music; downloadable musical sound recordings;
    downloadable video recordings featuring music;
    musical sound recordings; musical video recordings;
    pre-recorded CD's, video tapes, laser disks and
    DVD's featuring music; video recordings featuring
    music; visual recordings and audio visual
    recordings featuring music and animation, excluding
    content consisting of general knowledge questions,
    quizzes and games.  Defs.' Ex. 1.  Class 41
    consists of: Entertainment in the nature of live
    performances by a performer or group;
    [entertainment in the nature of visual and audio
    performances, and musical, variety, news and comedy
    shows; entertainment in the nature of visual and
    audio performances, namely, musical band, rock
    group, gymnastics, dance and ballet performances;
    entertainment, namely, live performances by a
    musical band;] entertainment services, namely,

1   providing a web site featuring musical
2   performances, musical performances, musical videos,
3   related film clips, photographs, and other
4   multimedia materials; entertainment services,
5   namely, providing prerecorded music, information in
6   the field of music, and commentary and articles
7   about music, all on-line via a global computer
8   network, entertainment, namely, live music
9   concerts; entertainment, namely, live performances
10  by musical bands, excluding general knowledge
11  questions, quizzes, and games.  <u>Id.</u>
12  3.  On February 24, 2012, Plaintiff amended the
13  Statement of Use and deleted "video tapes, laser
14  disks and DVD's featuring music."  Defs.' Statement
15  of Undisputed Facts ¶ 3.

**C. <u>Analysis</u>**

1. <u>Defendants' Request for Judicial Notice is
    Granted</u>

As an initial matter, Defendants request the Court
take judicial notice of the United States Patent and
Trademark Office ("USPTO") "File History" for
Registration No. 4,366,332 for the "Mastermind" mark
which was downloaded from the USPTO web site on
September 14, 2016.  Defs.' Req. for Judicial Notice
1:2-12.

A court may take judicial notice of a fact that is
not subject to reasonable dispute because it "can be
accurately and readily determined from sources whose

accuracy cannot reasonably be questioned."  Fed. R.
Evid. 201(b)(2).  Plaintiff did not object to the Court
taking judicial notice of the "File History."  VMR
Products, LLC v. V2H ApS, No. 2:13-CV-7719-CBM-JEMX,
2016 WL 1177834, at *1 (C.D. Cal. Mar. 18, 2016).
Courts may also take judicial notice of "'records and
reports of administrative bodies,' file histories, and
application materials."  Balance Studio, Inc. v.
Cybernet Entm't, LLC, No. 15-CV-04038-DMR, 2016 WL
1559745, at *1 (N.D. Cal. Apr. 18, 2016)(quoting Mack
v. South Bay Beer Distributors, Inc., 798 F.2d 1279,
1282 (9th Cir. 1986)); see Oroamerica Inc. v. D&W
Jewelry Co., Inc., 10 F. App'x 516, 517 n.4 (9th Cir.
2001).

Because the document is not subject to reasonable
dispute, is capable of accurate and ready determination
by resort to sources whose accuracy cannot reasonably
be questioned, and is a matter of public record, see
Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001),
the Court **GRANTS** Defendants' Request for Judicial
Notice of the "File History" for Registration No.
4,366,332 for the "Mastermind" mark.

   2.   The Trademark for "Mastermind" Should be
        Cancelled because it is a Descriptive Term and
        has not Acquired Secondary Meaning

Courts have the power to order the cancellation of
registrations in whole or in part.  15 U.S.C. § 1119.
Defendants contend the registration for "Mastermind"

should be cancelled because it is a descriptive term that has failed to acquire secondary meaning.  Mot. 5:4-10.  Plaintiff argues that the mark is not descriptive but suggestive entitling the mark to trademark protection.  Opp'n 8:20.  Even if it is descriptive, it has acquired secondary meaning.  <u>Id.</u> at 12:10-12.

"When a plaintiff pursues a trademark action involving a properly registered mark, that mark is presumed valid, and the burden of proving that the mark is generic rests upon the defendant."  <u>Solid 21, Inc.</u> <u>v. Hublot of America</u>, 109 F. Supp. 3d 1313, 1322 (C.D. Cal. 2015)(citing <u>Yellow Cab Co. of Sacramento v.</u> <u>Yellow Cab of Elk Grove, Inc.</u>, 419 F.3d 925, 927 (9th Cir. 2005)).  While 15 U.S.C. § 1115(a) does state that a registration is admissible and is "prima facie evidence of the validity of the registered mark and of the registration of the mark," the section goes on to say that it "shall not preclude another person from proving any legal or equitable defense or defect." Therefore, while there is a presumption of validity, Defendants can attack that presumption on a motion for summary judgment.

Courts have classified trademarks in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.  <u>Solid 21</u>, 109 F. Supp. 3d at 1323 (citing <u>Zobmondo Entm't, LLC, v. Falls Media, LLC</u>, 602 F.3d

1108, 1113 (9th Cir. 2010)).  The last three
classifications are automatically protected "because
they identify a product's source."  <u>Id.</u> (citing <u>Yellow</u>
<u>Cab</u>, 419 F.3d at 927). "'[D]escriptive marks, which
describe the qualities or characteristics of a product,
may be registered only if the holder of the mark shows
that the mark has acquired distinctiveness through
secondary meaning.'"  <u>Id.</u> (quoting <u>KP Permanent</u>
<u>Make-Up, Inc. v. Lasting Impression I, Inc.</u>, 408 F.3d
596, 602 (9th Cir. 2005); <u>see also</u> <u>Zobmondo Entm't</u>,
602 F.3d at 1113 (finding descriptive marks must have
secondary meaning to be protected).

        Courts look to the thought process from the mark to
the actual product finding that "[i]f the mental leap
between the word and the product's attribute is not
almost instantaneous, this strongly indicates
suggestiveness, not direct descriptiveness."
<u>Self-Realization Fellowship Church v. Ananda Church of</u>
<u>Self-Realization</u>, 59 F.3d 902, 911 (9th Cir.
1995)(citations omitted).  "A trademark is descriptive
if it describes the product to which it refers or its
purpose."  <u>Self-Realization Fellowship</u>, 59 F.3d at 910
(citations omitted).  A trademark is suggestive "if
'imagination' or a 'mental leap' is required in order
to reach a conclusion as to the nature of the product
being referenced."  <u>Lahoti v. VeriCheck, Inc.</u>, 586 F.3d
1190, 1198 (9th Cir. 2009)(quoting <u>Filipino Yellow</u>
<u>Pages, Inc. v. Asian Journal Publ'ns, Inc.</u>, 198 F.3d

1  1143, 1147 n.3 (9th Cir. 1999)).

2      A court's determination of whether a mark is

3  suggestive or descriptive is not as clear as one would

4  hope and is not as objective as one would think.

5  Zobmondo Entm't, 602 F.3d at 1114; Lahoti, 586 F.3d at

6  1197.  The dictionary definition may be relevant in the

7  analysis of whether a mark is descriptive because it

8  shows how the public may view the mark and what, if

9  any, mental step is needed.  Zobmondo Entm't, 602 F.3d

10 at 1116; see Surgicenters of Am., Inc. v. Med. Dental

11 Surgeries, Co., 601 F.2d 1011, 1015 n.11 (9th Cir.

12 1979)("While not determinative, dictionary definitions

13 are relevant and often persuasive in determining how a

14 term is understood by the consuming public . . ."); cf.

15 Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1142

16 (9th Cir. 2002)(holding that "Entrepreneur" is merely

17 descriptive as the name of a magazine because an

18 "entirely unimaginative, literal-minded person" would

19 understand its meaning).

20      The issue for the Court to determine is whether

21 "Mastermind" is descriptive with respect to Plaintiff's

22 audio and visual recordings, live performances, and the

23 other goods and services in Classes 009 and 41.  It is

24 difficult for the Court to conclude, as Plaintiff

25 suggests, that a consumer would need to make a mental

26 leap to conclude that "Mastermind" is attributed to

27 Plaintiff's goods and services.  "Descriptive terms

28 'describe[ ] a person, a place or an attribute of a

product.'"   *Japan Telecom, Inc. v. Japan Telecom*
*America Inc.*, 287 F.3d 866, 872 (9th Cir. 2002)
(quoting *New Kids on the Block v. New Am. Publ'g, Inc.*,
971 F.2d 302, 306 (9th Cir. 1992)).   Defendants assert
that "Mastermind" is descriptive as it applies to
"creative artists," based on Oxford Dictionary's
definition of "Mastermind" as "a person with an
outstanding intellect" and the first usage example
references "an eminent musical mastermind."   Reply 6:5-
15.   Plaintiff utilizes Merriam-Webster's definition of
"Mastermind" which means "to plan and organize
something" as a noun and as a verb "a person who plans
and organized something."   Opp'n 7:16-20.   Of interest,
Merriam-Webster also includes a definition of
"Mastermind" as "a person who supplies the directing or
creative intelligence for a project."
https://www.merriam-webster.com/dictionary/mastermind.

Moreover, the overwhelming evidence provided by
Defendants—that so many others in the rap industry have
utilized the mark "Mastermind" in album titles, web
sites, and song lyrics—refutes Plaintiff's assertion
that such a mental leap or imagination is required to
attribute "Mastermind" to audio and visual recordings,
audio recordings featuring music, musical video
recordings, live performances, and other goods and
services noted in Classes 009 and 41.   Therefore, the
Court finds that the "Mastermind" mark is descriptive.

The question of whether a trademark has acquired

secondary meaning is one of fact.  Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir. 1985) (en banc).  However, that does not preclude the Court, on a motion for summary judgment, from determining whether Plaintiff has provided a genuine issue of material fact as to whether a mark has obtained secondary meaning.  Yellow Cab, 419 F.3d at 930. Plaintiff needs to provide enough evidence showing secondary meaning to establish a genuine dispute of fact.  Japan Telecom, 287 F.3d at 873; see Fed. R. Civ. P. 56(e).

    If a trademark that is descriptive lacks secondary meaning, it is invalid.  Bada Co. v. Montgomery Ward & Co., 426 F.2d 8, 11 (9th Cir. 1970).  To acquire secondary meaning, section 1052(f) requires that the mark must have become "distinctive of the applicant's goods."  15 U.S.C. § 1052(f); Filipino Yellow Pages, 198 F.3d at 1147.  "The basic element of secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source."  Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 820 (9th Cir. 1980).  A mark has acquired secondary meaning if buyers and potential buyers automatically associate the mark with Plaintiff.  Self-Realization Fellowship, 59 F.3d at 911-12 (holding Plaintiff failed to establish "Self-Realization" acquired secondary meaning because members of the American Hindu-Yoga community

believed the mark was a spiritual state of mind and did not automatically associate a "Self-Realization" product with Plaintiff).

There are many ways to establish if a trademark has acquired secondary meaning.  These include: direct consumer testimony; survey evidence; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.  <u>Filipino Yellow Pages</u>, 198 F.3d at 1151.  A plaintiff "'must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.'"  <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768 F.2d 1001, 1015 (9th Cir. 1985)(quoting <u>Kellogg Co. v. National Biscuit Co.</u>, 305 U.S. 111, 118 (1938)).  Other factors to consider include: "(1) whether actual purchases of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive."  <u>Id.</u> (citing 1 Gilson, Trademark Protection & Practice, § 2.09[1]).  Expert surveys can be extremely persuasive as evidence of secondary meaning.  <u>Levi Strauss</u>, 778 F.2d at 1358.

Plaintiff argues that there is confusion in the marketplace between Plaintiff and Roberts.  Opp'n 6:23-26.  However, Plaintiff has not provided any evidence

to show this actual confusion.  His personal and
conclusory statements and assertions are not enough.
Japan Telecom, 287 F.3d at 873-75 (finding that two
incorrectly addressed pieces of mail was not sufficient
to show actual confusion that buyers had come to
associate "Japan Telecom" with just one company).  The
court in Japan Telecom held that Plaintiff's
advertising from 1984 was not sufficient to establish
secondary meaning because when looking to the amount,
nature, and geographical scope of the advertisement,
there was not sufficient evidence that the mark was
used in a way "that any more than a small set of buyers
had gained any familiarity with it" since the
advertisement was geared to the Japanese community in
Southern California.  Id. at 873-75.

    Plaintiff has failed to show a genuine issue of
material fact that disproves Defendants assertion that
there are numerous artists, web sites, album titles,
and song lyrics that all utilize "Mastermind" in one
form or another.  Mot. 3:16-27; 4; Defs.' Statement of
Undisputed Facts ¶¶ 22-24.  Plaintiff's argument that
the fact the social media platform Myspace currently
has dozens of musicians utilizing "Mastermind" is
irrelevant because the website is not a relevant,
active, or popular website is unavailing.  Pl.'s Opp'n
to Disputed Facts 11:20-13:12.  The fact that a website
is not as popular as it once was does not change the
fact that it does exist and there are other artists

14

1  utilizing "Mastermind" in one form or another.

2      Additionally, Plaintiff fails to create a genuine
3  dispute of fact that "Mastermind" is widely used as a
4  descriptive term by other rappers, in album titles, and
5  song lyrics by his statement that he is the only hip-
6  hop artist who owns the trademark for "Mastermind."
7  The fact that he is the only registered trademark owner
8  of "Mastermind" does not change the very fact that it
9  is being used by others.  And Plaintiff's conclusory
10 statement that he is the only person in the hip-hop
11 industry on the West Coast to use it does not create an
12 issue of fact.  Without actual evidence, Plaintiff
13 fails to show that buyers or potential buyers would
14 only connect "Mastermind" to Plaintiff.  Defendants
15 have shown the numerous other uses of "Mastermind" by
16 other individuals making it clear that use of the
17 trademark has not been exclusive.  Defs.' Exs. F, G, H,
18 I.  These include: a Myspace search of "Mastermind"
19 with numerous results of other individuals using
20 "Mastermind" (not only Plaintiff) and several articles
21 and web sites depicting artists using "Mastermind" in
22 song titles, album names, as an artist name, or in
23 reference to a characteristic of an artist.  Id.

24     While Plaintiff did provide flyers purportedly
25 showing him using "Mastermind" for performances at
26 various venues, the advertisements did not include the
27 years of the performances.  Pl.'s Ex. D.  However,
28 assuming they are for performances throughout numerous

1  years, this alone is not sufficient to conclude the
2  mark has acquired a secondary meaning.  Morever, while
3  Plaintiff provides a screenshot of some of his songs
4  for sale on the website iTunes as "Mastermind,"
5  Plaintiff has failed to create a genuine issue of
6  material fact that the mark has become "distinctive of
7  the applicant's goods" and that buyers automatically
8  associate the "Mastermind" mark with Plaintiff's goods
9  or services, in light of Defendants' overwhelming
10  evidence of the mark's use by other individuals and
11  entities.  Pl.'s Ex. L; Defs.' Exs. F, G, H, I;
12  Filipino Yellow Pages, 198 F.3d at 1147;
13  Self-Realization Fellowship, 59 F.3d at 911–12.
14      For the reasons set forth above, Plaintiff does not
15  have a protectable trademark in the "Mastermind" mark
16  because it is descriptive and has not acquired
17  secondary meaning.  Summary judgment is granted in
18  favor of Defendants as to its counterclaim.
19      The Court notes that Defendants also argued the
20  trademark should be cancelled for several other reasons
21  including: 1) Plaintiff used the mark as a signature
22  and not a source identifier, Mot. 5:11-16, 2) Plaintiff
23  failed to use the mark in commerce in connection with
24  all of the goods listed in Class 009, id. at 9:15-17,
25  3) Plaintiff committed fraud upon the USPTO in
26  obtaining the trademark, id. at 11:4-6, and 4)
27  Plaintiff abandoned the mark.  Mot. 12:6-9.  As the
28  Court has determined the mark should be cancelled

1  because it is a descriptive term and it has not

2  acquired secondary meaning, the Court declines to go

3  through the unnecessary analysis of the additional

4  arguments Defendants assert to support cancellation of

5  the trademark.

6       3.   <u>There is no Genuine Issue of Material Fact</u>

7            <u>as to Plaintiff's Federal Dilution Claim</u>

8            <u>and Summary Judgment Should be Granted in Favor</u>

9            <u>of Defendants as to this Claim</u>

10      Defendants also request summary judgment as to

11 Plaintiff's federal dilution claim because Plaintiff's

12 use of "Mastermind" is not famous.  Mot. 14:1-4.  To be

13 successful on a claim for dilution, a party must show

14 "that (1) the mark is famous and distinctive; (2) the

15 defendant is making use of the mark in commerce; (3)

16 the defendant's use began after the mark became famous;

17 and (4) the defendant's use of the mark is likely to

18 cause dilution by blurring or dilution by tarnishment."[1]

19 _____

20      [1] A mark is famous "if it is widely recognized by the
   general consuming public of the United States as a designation of
21 source of the goods or services of the mark's owner."  15 U.S.C.
   § 1125(c)(2)(A).  Courts may consider the following factors in
22 determining if a mark is sufficiently recognizable including:
   "(i) the duration, extent, and geographic reach of advertising
23 and publicity of the mark, whether advertised or publicized by
   the owner or third parties; (ii) the amount, volume, and
24 geographic extent of sales of goods or services offered under the
   mark; (iii) the extent of actual recognition of the mark; (iv)
25 whether the mark was registered under the Act of March 3, 1881,
   or the Act of February 20, 1905, or the principal register."  <u>Id.</u>
26 at § 1125(c)(2)(A).  Dilution by blurring is an "association
   arising from the similarity between a mark or trade name and a
27 famous mark that impairs the distinctiveness of the famous mark."
   <u>Id.</u> at § 1125(c)(2)(B).  Courts may consider the following
28

<u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 634 (9th Cir. 2007); 15 U.S.C. § 1125(c)(1).  The finding of a mark as famous is "a rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country."  <u>Green v. Fornario</u>, 486 F.3d 100, 105 (3d Cir. 2007).

Plaintiff's "Mastermind" mark is not famous because as the Court discussed above, it is merely descriptive without secondary meaning.  Plaintiff has failed to show that "Mastermind" is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services" of the mark Plaintiff owns.  15 U.S.C. § 1125(c)(1).  While Plaintiff alleges he has used the mark for nearly eighteen years, Plaintiff fails to show the extent and geographic reach of advertising and publicity of the mark.  <u>See</u> <u>Jada Toys, Inc.</u>, 518 F.3d at 635 (holding that 350 million dollars expended in advertising the mark, three billion units bearing the mark having been

---

factors to determine if a mark is likely to cause dilution by blurring: (i) the degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the user of the mark or trade name intended to create an association with the famous mark; (vi) any actual association between the mark or trade name and the famous mark." <u>Id.</u>  Dilution by tarnishment is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." <u>Id.</u> at § 1125(c)(2)(C).

18

sold, and the units bearing the mark having been sold in all fifty states and throughout the work supported a finding that HOT WHEELS was famous).    Additionally, Plaintiff provided the Court with no evidence of the amount, volume, and geographic extent of the total sales of his goods under the "Mastermind" mark.   In his declaration and disputed material facts, Plaintiff states that as early as 1999, he sold pre-recorded CD's and his audio recordings were available for purchase as early as 2006 via SNOCAP download, which is a digital rights company and downloading software.   Opp'n 5:10-16.   However, Plaintiff provides absolutely no documentation to support those contentions that creates a genuine issue of fact that the mark is famous.

Moreover, there is no evidence of actual recognition of the mark, as Plaintiff failed to even address Defendants' request for summary judgment as to Plaintiff's dilution claim.[2]   Such things as surveys or

---

[2] Defendants request sanctions against Plaintiff for Plaintiff's failure to meet and confer in good faith pursuant to Local Rule 7-3 as to Plaintiff's federal dilution claim because Plaintiff did not reconsider its position in dismissing this claim after Defendants advised Plaintiff of the lack of merit of the claim and Plaintiff did not even mention the claim in its Opposition.   Reply 2:5-22.   While the Court encourages parties to attempt resolution of disputes during the meet and confer process, the fact that Plaintiff did not dismiss this claim after what Defendants believe was compelling evidence of a lack of merit of the claim or Plaintiff's failure to address the claim in its Opposition is not grounds for sanctions.   The Court will not assume why Plaintiff failed to dismiss the claim after conferring with Defendants or why Plaintiff failed to specifically address the federal dilution claim in its Opposition.   The Court denies Defendants request for sanctions against Plaintiff.

expert opinion, or the lack thereof, weigh heavily in
finding whether there is actual recognition of a mark
and that it is famous.  <u>Network Automation, Inc. v.</u>
<u>Hewlett-Packard Co.</u>, No. CV 08-4675-JFW-RZX, 2009 WL
5908719 at *10-11 (C.D. Cal. Sept. 14, 2009); <u>see</u> <u>Visa</u>
<u>International Service Association v. JSL Corp.</u>, 590 F.
Supp. 2d 1306, 1315 (D. Nev. 2008) (holding "that a
survey by plaintiff's expert demonstrating that 99
percent of respondents were aware of the VISA brand
weighed heavily in favor of a finding of fame.")

The Ninth Circuit has held that "[d]ilution is a
cause of action invented and reserved for a select
class of marks-those marks with such powerful consumer
association that even non-competing uses can impinge on
their value." <u>Avery Dennison Corp. v. Sumpton</u>, 189
F.3d 868, 875 (9th Cir. 1999).  Courts have held that
for a mark to be famous, it must be "truly prominent
and renowned." <u>Id.</u> at 875; (quoting <u>I.P. Lund Trading</u>
<u>ApS v. Kohler Co.</u>, 163 F.3d 27, 46 (1st Cir. 1998)).

While Plaintiff has had a lengthy professional
career in the hip-hop industry, there is no evidence
that the "Mastermind" mark is so "widely recognized by
the general consuming public of the United States" as
it relates to identifying Plaintiff and his goods and
services.  15 U.S.C. § 1125(c)(2)(A).  At the very
least, Plaintiff has failed to provide any supported
factual disputes that would call this conclusion into
question.

1   As the mark is not famous, there is no issue of
2   fact as to whether Defendants' use began after the mark
3   became famous.   Since Plaintiff failed to provide the
4   Court with any genuine issue of material fact as to
5   whether the "Mastermind" mark is famous, the Court need
6   not analyze whether Defendants are making use of the
7   mark in commerce or whether Defendants' use of the mark
8   is likely to cause dilution by blurring or dilution by
9   tarnishment.   As such, summary judgment is granted in
10   favor of Defendants on Plaintiff's federal dilution
11   claim.
12       4.   There May be a Genuine Issue of Material Fact
13            as to Defendants' Fair Use Defense
14   Defendants also request summary judgment as to
15   Plaintiff's claims because its use of "Mastermind" is
16   subject to the fair use defense.   Mot. 17:13.
17   Plaintiff counters this argument in citing a Third
18   Circuit case and states that fair use is not a defense
19   for a registered trademark, only for copyright
20   infringement.   Opp'n 18:24-19:4.   Defendants are
21   correct that Plaintiff has misread the holding of
22   Century 21 Real Estate Corp. v. Lendingtree, Inc., 425
23   F.3d 211, 233 (3d Cir. 2005).   It was in the dissent
24   that Judge Fisher articulated his opinion that
25   nominative fair use is not a valid affirmative defense
26   to trademark infringement.
27   Fair use is a valid affirmative defense to
28   trademark infringement.   Bauer Bros., LLC v. Nike,

21

<u>Inc.</u>, 159 F. Supp. 3d 1202, 1212–13 (S.D. Cal. 2016).
There are two types of fair use that can be asserted as
an affirmative defense, classic and nominative.   15
U.S.C. § 1115(b); <u>Cairns v. Franklin Mint Co.</u>, 292 F.3d
1139, 1150 (9th Cir. 2002).   Classic fair use is
employed when a defendant has used a plaintiff's mark
to describe his own product while nominative fair use
is employed when a defendant has used a plaintiff's
mark to describe the plaintiff's product.   <u>Cairns</u>, 292
F.3d at 1150.   Classic fair use involves a defendant's
use of a descriptive term in its "primary, descriptive
sense."   <u>Id.</u> at 1151; <u>Fortune Dynamic, Inc. v.</u>
<u>Victoria's Secret Stores Brand Management, Inc.</u>, 618
F.3d 1025, 1031 (9th Cir. 2010).   The purpose of the
fair use defense is to prevent any one individual from
obtaining a monopoly of a descriptive term simply by
trademarking it first.   <u>Fortune Dynamic</u>, 618 F.3d at
1039.   Here, Defendants are asserting a classic fair
use defense to trademark infringement.   Reply 4:12-14.

To successfully assert a classic fair use defense a
defendant must show: "1) [d]efendant's use of the term
is not as a trademark or service mark; 2) [d]efendant
uses the term 'fairly and in good faith;' and 3)
[d]efendant uses the term 'only to describe its goods
or services.'"   <u>Cairns</u>, 292 F.3d at 1151; 15 U.S.C. §
1115(b)).   Classic fair use is not available as a
defense if there is a likelihood of confusion as to the
///

1    origin of the product.[3]  <u>Bauer Bros.</u>, 159 F. Supp. 3d

2    at 1212–13.

3         Defendants fail to go through each factor relevant

4    in determining whether its use of "Mastermind" is

5    entitled to the fair use defense.  The only argument

6    Defendants raise to assert this defense is that

7    "Mastermind" has been so widely used as a descriptive

8    term and Defendants did not intend that consumers

9    recognize its works by that identifier.  Mot. 17:21-28.

10   Plaintiff fares no better in showing there is a genuine

11   issue of material fact as to this defense because its

12   contention is that fair use is not even a valid defense

13   to trademark infringement (which it is) and that

14   "Mastermind" is not merely a descriptive term.  Opp'n

15   18:24-19:12.  As summary judgment is granted as to the

16   cancellation of the trademark and Plaintiff's federal

17   dilution claim, the Court declines to parse through the

18   parties' lackluster arguments to go through an

19   unnecessary analysis.  Summary judgment as to

20

21

22        [3] Courts have used the factors utilized in determining
     whether there is a likelihood of confusion in determining
     trademark infringement from <u>AMF Inc. v. Sleekcraft Boats</u>, 599
23   F.2d 341, 348-49 (9th Cir. 1979) <u>abrogated on other grounds</u> by
     <u>Mattel, Inc. v. Walking Mountain Productions</u>, 353 F.3d 792 (9th
24   Cir. 2003) in determining if there is a likelihood of confusion
     when a fair use defense is asserted.  Those factors include: 1)
25   the strength of the mark; 2) proximity of the goods; 3)
     similarity of the marks; 4) evidence of actual confusion; 5)
26   marketing channels used; 6) type of goods and the degree of care
     likely to be exercised by the purchaser; 7) defendant's intent in
27   selecting the mark; and 8) the likelihood of expansion of the
     product lines.
28

1    Defendants' fair use defense is denied.

2         Defendants also raise an argument as to the

3    limitations on Plaintiff's damages for any alleged

4    infringement because of Plaintiff's failure to provide

5    actual notice by failing to use the ® symbol pursuant

6    to 15 U.S.C. § 1111.  Mot. 18:5-22.  For the same

7    reasons stated above, this analysis is moot and the

8    Court declines to address this argument.

9         Each of Plaintiff's claims is dependent on its

10   ownership of a protectable trademark and Defendants'

11   alleged infringement of the trademark "Mastermind."[4]

12   Because the Court concludes that "Mastermind" is

13   descriptive and has not acquired secondary meaning

14   thereby not entitling the mark to trademark protection

15   and the Court's granting of summary judgment as to

16   Plaintiff's Federal Dilution Claim, summary judgment as

17   to Plaintiff's remaining claims of unfair competition,

18   unjust enrichment, and misappropriation is also

19   _____

20        [4] Solid 21, 109 F. Supp. 3d at 1322; see 15 U.S.C. §
     1114(1); Lahoti, 586 F.3d at 1197 ("to state a claim under 15
21   U.S.C. § 1114(1), plaintiff must prove ownership of a valid
     mark"); 15 U.S.C. § 1125(a); Int'l Order of Job's Daughters v.
22   Lindeburg & Co., 633 F.2d 912, 917 (9th Cir. 1980) ("test for
     claims under 15 U.S.C. §§ 1114 and 1125(a) are the same");
23   Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1153 (9th
     Cir.2002)("dismissing claims under California's [Unfair
24   Competition Law] as 'substantially congruent' to claims under the
     Lanham Act")(internal quotation marks and citations omitted);
25   Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 975 n.90 (C.D.
     Cal. 2002)("standard under Lanham Act for trademark infringement
26   and unfair competition is the same, and actions under
     California's [Unfair Competition Law] for state claims . . . for
27   unfair competition are 'substantially similar to' comparable
     federal claims.")
28

                                  24

1    granted.[5]

2                            **IV. CONCLUSION**

3         Accordingly, the Court **GRANTS** Defendants' Request

4    for Judicial Notice and the Court **GRANTS** Defendants'

5    Motion for Summary Judgment.

6    **IT IS SO ORDERED.**

7    DATED: December 15, 2016      s/ RONALD S.W. LEW
                                    _____
8                                  **HONORABLE RONALD S.W. LEW**
                                   Senior U.S. District Judge
9

10

11

12    _____

13         [5] In <u>Toho Co., Ltd. v. Sears, Roebuck & Co.</u>, 645 F.2d 788,
      794 (9th Cir. 1981), the Ninth Circuit stated that Plaintiff
      failed to cite to any cases extending a misappropriation theory
14    to trademark infringement and that California courts would also
      not extend such theory to a claim for trademark infringement.
15    <u>Bell v. Harley Davidson Motor Co.</u>, 539 F. Supp. 2d 1249, 1256
      (S.D. Cal. 2008) ("Black-letter law holds that California's
16    common-law doctrine of misappropriation does not extend to
      trademark infringement claims.")  Courts have also held that
17    unjust enrichment is not a separate cause of action but a form of
      relief.  <u>Klein Electronics, Inc. v. Boxwave Corp.</u>, No. 10-CV-
18    2197- WQH-(POR), 2011 WL 2560238, at *5 (S.D. Cal. June 27,
      2011)(citing <u>Johns v. Bayer Corp.</u>, No. 09-cv-1935-DMS, 2010 WL
19    476688, at *6 n.3 (S.D. Cal. Feb. 9, 2010) ("While a split of
      authority appears to exist on this issue, this Court agrees with
20    those courts that conclude unjust enrichment is not a separate
      claim."); <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 387 (2004)
21    ("Unjust enrichment is not a cause of action . . . or even a
      remedy, but rather a general principle, underlying various legal
22    doctrines and remedies.  It is synonymous with restitution.")
23    (internal citations omitted); <u>see also</u> <u>McKell v. Wash. Mut.,
      Inc.</u>, 142 Cal. App. 4th 1457, 1490 (2006) ("There is no cause of
24    action for unjust enrichment.  Rather, unjust enrichment is a
      basis for obtaining restitution based on quasi-contract or
25    imposition of a constructive trust.") (citation omitted)

26

27

28