O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAUL CAIZ,<br><br>            Plaintiff,<br><br>     v.<br><br>WILLIAM LEONARD ROBERTS II, aka MASTERMIND aka RICK ROSS; UNIVERSAL MUSIC GROUP, INC.,; DEF JAM RECORDS, INC.,; MAYBACH MUSIC GROUP, LLC,<br><br>           Defendants. | CV 15-9044-RSWL-AGRx<br><br>**ORDER re: Defendants'<br>Second Motion for<br>Summary Judgment** [72] |

Currently before the Court is Defendants William Leonard Roberts II aka Mastermind aka Rick Ross; Universal Music Group, Inc.; Def Jam Records, Inc.; and Maybach Music Group, LLC's ("Defendants") Second Motion for Summary Judgment ("Motion") [72].  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendants' Motion.

# I. BACKGROUND

## A. Factual Background

Plaintiff Raul Caiz ("Plaintiff") is a hip-hop music artist who owns the trademark rights to the term "Mastermind." Compl. ¶ 2, ECF No. 1. Defendant William Leonard Roberts, II ("Roberts") is also a hip-hop artist commonly known as "Rick Ross." Id. ¶ 3. Defendant Maybach Music Group, Inc. ("Maybach") is a Florida limited liability company, with its principal place of business in Mississippi. Id. ¶ 4. Defendant Universal Music Group, Inc. ("UMG") is a Delaware corporation, headquartered in California. Id. ¶ 5. Defendant Def Jam Records, Inc. ("Def Jam") is a subsidiary of UMG headquartered in New York. Id. ¶ 6. Plaintiff alleges that each Defendant was, at all relevant times, either an agent, supervisor, manager, joint venturer, employer, and/or employee and/or co-conspirator of each or one or more of the remaining Defendants, and was acting in the scope of such role with the permission and consent of their codefendants. Id. ¶ 20.

On December 24, 2005, Plaintiff applied for registration of the mark "Mastermind" with the United States Patent and Trademark Office ("USPTO"), and the registration was approved on July 16, 2013 in class 009 for audio and video recordings.[1] Id. ¶ 25. Plaintiff

---

[1] The full text of Plaintiff's class 009 registration reads "Audio recordings featuring music; Downloadable musical sound

alleges he has used the name "Mastermind" in the music industry since 1999. Id. ¶ 32. Plaintiff alleges that Defendants have willfully infringed on Plaintiff's trademark rights by releasing an album entitled "Mastermind," titling Roberts' tour "Mastermind," and by Roberts taking on the persona of "Mastermind." Id. ¶¶ 3, 7.

**B.** **Procedural Background**

On November 20, 2015, Plaintiff filed his Complaint [1] alleging against all Defendants: (1) federal trademark infringement; (2) violation of the Lanham Act section 43(a); (3) federal trademark dilution; (4) unfair competition; (5) unjust enrichment; and (6) misappropriation. On February 18, 2016, Defendants filed a Counterclaim against Plaintiff [22] for cancellation of the federal trademark registration under 28 U.S.C. § 2201(a) and 15 U.S.C. §§ 1119, 1064. Defs.' Counterclaim ¶ 5, ECF No. 22. Defendants alleged that the "Mastermind" mark is invalid because it is a generic and/or merely descriptive term that has not acquired a secondary meaning, and also because Plaintiff has abandoned the mark. Id. ¶ 12.

On October 7, 2016, Defendants filed their first Motion for Summary Judgment [44]. On December 15,

recordings; Downloadable video recordings featuring music; Musical sound recordings; Musical video recordings; Pre-recorded CD's; Video recordings featuring music; Visual recordings and audio visual recordings featuring music and animation, excluding content consisting of general knowledge of questions quizzes and games." Pl.'s Opp'n at 3 n.1, ECF No. 78.

2016, the Court granted Defendants' Motion [58] as to Defendants' counterclaim to cancel Plaintiff's mark on the basis that the mark was a descriptive, laudatory term and had obtained no secondary meaning. Order re Summ. J. ("MSJ Order") 15-16, ECF No. 58. The Court did not address Defendants' other asserted bases for cancellation,[2] or their asserted affirmative defense of fair use. The Court also granted Defendants' Motion as to Plaintiff's Federal Dilution Claim because Plaintiff did not provide the Court with any genuine issue of material fact as to whether the mark is famous. Id. at 21:1-11. Because the Court cancelled the mark, the Court also granted summary judgment as to Plaintiff's remaining claims of unfair competition, unjust enrichment, and misappropriation. Id. at 24:9-18. The Court issued a Judgment [59] in favor of Defendants consistent with this ruling on December 16, 2016.

Plaintiff timely appealed, and on June 15, 2018, the Ninth Circuit reversed and remanded the Court's grant of summary judgment [67]. The Ninth Circuit reversed the Court's order to cancel the registration and its finding that the mark was not distinctive, and

---

[2] The Court noted in its Order that Defendants' other arguments to cancel the mark are: (1) that Plaintiff used the mark as a signature and not a source identifier; (2) that Plaintiff failed to use the mark in commerce in connection with all of the goods listed in Class 009; (3) that Plaintiff committed fraud upon the USPTO in obtaining the trademark; and (4) that Plaintiff abandoned the mark. MSJ Order at 16:19-27.

thus invalid.[3]  The Ninth Circuit also declined to consider Defendants' fair use defense and remaining arguments for cancellation, and left them to the Court to consider.  <u>See</u> Ninth Cir. Mem. 5, ECF No. 67. Accordingly, Defendants filed the instant Motion [72] on February 12, 2019, asserting a First Amendment defense as well as re-asserting the alternative bases for relief from their first Motion for Summary Judgment, which neither the Court nor the Ninth Circuit addressed.  Plaintiff timely opposed [78], and Defendants timely replied [79].

## II. DISCUSSION

### A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 244, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in

---

[3] Plaintiff did not challenge the Court's grant of summary judgment as to his other claims—trademark dilution, unfair competition, unjust enrichment, and misappropriation—thus the Ninth Circuit deemed any argument regarding those claims waived. <u>See</u> Ninth Circuit Mem. at 5.

the light most favorable to the nonmovant.  <u>Twentieth</u>
<u>Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327,
1328-29 (9th Cir. 1983).  In ruling on a motion for
summary judgment, the court's function is not to weigh
the evidence, but only to determine if a genuine issue
of material fact exists.  <u>Anderson</u>, 477 U.S. at 255.

Where the nonmovant bears the burden of proof at
trial, the movant need only prove that there is no
evidence to support the nonmovant's case.  <u>In re Oracle</u>
<u>Corp. Secs. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010).
If the movant satisfies this burden, the burden then
shifts to the nonmovant to produce admissible evidence
showing a triable issue of fact.  <u>Id.</u>; <u>Nissan Fire &</u>
<u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03
(9th Cir. 2000); <u>see also</u> <u>Cleveland v. Policy Mgmt.</u>
<u>Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999)(quoting <u>Celotex</u>
<u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).

**B.   Discussion**

1.   <u>Defendants' Request for Judicial Notice</u>

Defendants request that the Court take judicial
notice of the USPTO's "File History" for the mark
"Mastermind" (Registration No. 4,366,332), downloaded
from the USPTO website on September 14, 2016.  Defs.'
Req. for Judicial Notice ("RJN"), ECF No. 74.

A court may take judicial notice of a fact that is
not subject to reasonable dispute because it "can be
accurately and readily determined from sources whose
accuracy cannot reasonably be questioned."  Fed. R.

Evid. 201(b)(2). Plaintiff did not object to the Court
taking judicial notice of the "File History." Courts
may also take judicial notice of "'records and reports
of administrative bodies,' file histories, and
application materials." Balance Studio, Inc. v.
Cybernet Entm't, LLC, No. 15-CV-04038-DMR, 2016 WL
1559745, at *1 (N.D. Cal. Apr. 18, 2016) (quoting Mack
v. South Bay Beer Distributors, Inc., 798 F.2d 1279,
1282 (9th Cir. 1986)); see Oroamerica Inc. v. D&W
Jewelry Co., Inc., 10 F. App'x 516, 517 n.4 (9th Cir.
2001).

Because the document is not subject to reasonable
dispute, is capable of accurate and ready determination
by resort to sources whose accuracy cannot reasonably
be questioned, and is a matter of public record, see
Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001),
the Court **GRANTS** Defendants' Request for Judicial
Notice of the "File History" for Registration No.
4,366,332 for the "Mastermind" mark.

    2. First Amendment Defense

        a. *Waiver*

As a preliminary matter, Plaintiff argues that
Defendants have waived their defense that their use of
the mark "Mastermind" is protected free speech under
the First Amendment because they did not include this
defense in their Answer, their counterclaims, or in
their first Motion for Summary Judgment. Pl.'s Opp'n
9:9-11, ECF No. 78. Defendants argue that Plaintiff

cites no case law stating that this is an affirmative defense, and even if it is, it functions as a category of fair use, which Defendants pleaded in their Answer. Defs.' Reply 3:1-3, ECF No.79; Answer at 9, ECF No. 18. Indeed, even where this defense has been considered an affirmative defense, it has been described as a "First Amendment Fair Use" affirmative defense. See VIP Prod. LLC, v. Jack Daniels Props., Inc., No. CV-14-2057-PHX-SMM, 2016 WL 5408313, at *5 (D. Ariz. Sept. 27, 2016) (citing Brown v. Elec. Arts. Inc., 724 F.3d 1235 (9th Cir. 2013)) (analyzing the Rogers Test discussion as "First Amendment Fair Use" protection for expressive works).

Moreover, even if Defendants did not adequately assert this defense in their Answer, Plaintiff has not established any prejudice as a result of the Court considering this defense. Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993) (finding failure to assert a defense in the answer does not waive the defense as long as its assertion at the summary judgment stage does not prejudice the plaintiff). Plaintiff only points to a "financial burden" to Plaintiff and a "re-working of Plaintiff's trial preparation," however, as discussed below, this defense serves as a complete bar to Plaintiff's legal claim, resulting in no further litigation costs and no trial to prepare for. Finally, no delays would occur as no further discovery is required for this defense; the

Rogers test can be applied as early as the motion to dismiss stage because the test analyzes facts facially apparent in a defendant's work. See Brown, 724 F.3d at 1246.

Because Defendants pleaded fair use as their sixth affirmative defense, and because Plaintiff failed to establish prejudice, the Court finds that Defendants did not waive this defense.

### b. Rogers *Test*

The parties dispute the applicability of what has become known as the Rogers test, derived from Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), which the Ninth Circuit has adopted to determine when trademark protection must give way to expressive speech protected by the First Amendment. See Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 902 (9th Cir. 2002) ("We agree with the Second Circuit's analysis and adopt the Rogers standard as our own."). The Rogers test requires the defendant to make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment. Gordon v. Drape Creative, Inc., 909 F.3d 257, 264 (9th Cir. 2018). The burden then shifts to the plaintiff claiming infringement, who must show "(1) that it has a valid, protectable trademark, and (2) that the mark is either not artistically relevant to the underlying work or explicitly misleading as to the source or content of the work." Id. "If the plaintiff satisfies both

elements, it still must prove that its trademark has been infringed by showing that the defendant's use of the mark is likely to cause confusion." Id.

Plaintiff argues that the Rogers test is not applicable here. Plaintiff relies on Masters Software, Inc. v. Discovery Communs., Inc., 725 F. Supp. 2d 1294 (W.D. Wash. 2010), to argue that a First Amendment defense does not apply to a reverse confusion trademark matter. In a reverse confusion case, a "smaller senior user seeks to protect its business identity from being overwhelmed by a larger junior user who has saturated the market with publicity." Cohn v. Petsmart, Inc., 281 F.3d 837, 841 (9th Cir. 2002). Here, it is undisputed that Plaintiff is the senior user, and Defendant Roberts is the larger, more well-known junior user of the mark "Mastermind". The Masters court held that Rogers only applies to cases where the junior user defendant adopted the mark specifically in order to refer to the senior user plaintiff. 725 F. Supp. 2d at 1306. Masters provides the example that, in MCA Records, a song entitled "Barbie Girl" did not infringe on Mattel's trademark for its Barbie dolls because it was an intentional reference to Mattel's product, and there was no likelihood of confusion as the song merely used the word "Barbie" in reference to the doll. Masters, 725 F. Supp. 2d at 1306 (discussing MCA Records, 296 F.3d 894). Plaintiff argues that pursuant to Masters, Rogers does not apply here because

Defendants did not intend to specifically refer to Plaintiff in using "Mastermind" as their album title. However, this Court is not aware of any court in this district that has adopted the <u>Masters</u> reasoning,[4] and the Ninth Circuit has expressly rejected the argument that <u>Rogers</u> has a referential requirement. <u>See Twentieth Century Fox TV v. Empire Distrib., Inc.</u>, 875 F.3d 1192 (9th Cir. 2017) ("This referential requirement does not appear in the text of the <u>Rogers</u> test, and such a requirement would be inconsistent with the purpose of the first prong of <u>Rogers</u>."). Thus, the Court finds that the <u>Rogers</u> test is not barred in this case simply because it involves reverse confusion.

The threshold question is then whether the alleged trademark use occurs in connection with an artistic or expressive work in order for <u>Rogers</u> to apply. <u>E.S.S. Entm't 2000, Inc. v. Rock Start Videos, Inc.</u>, 547 F.3d 1095, 1099-1100 (9th Cir. 2008). Musical recordings, like Defendants' album, are expressive works. <u>See</u>, <u>e.g.</u>, <u>Rogers</u>, 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection."). Thus the <u>Rogers</u> test applies, and the Court will now consider each

---

[4] The Court also notes that <u>Masters</u> refrained from making a blanket holding that <u>Rogers</u> never applies to reverse confusion cases, as it stated that although <u>Rogers</u> is not mentioned in numerous Ninth Circuit cases addressing reverse confusion, the court "need not decide this question." 725 F. Supp. 2d at 1306 n.7.

prong in turn below to determine whether Plaintiff has established a triable issue as to either prong. Gordon, 909 F.3d at 265 ("When, as here, the defendant moves for summary judgment and has demonstrated that its use of the plaintiff's mark is part of an expressive work, the burden shifts to the plaintiff to raise a genuine dispute as to at least one of Rogers's two prongs.").

> i. *Prong One*

The first prong of the Rogers test requires that the use of the trademark have "minimal" artistic relevance to the underlying work. Rogers, 875 F.2d at 1001. The bar is set low: "the level of relevance merely must be above zero." E.S.S. Entm't, 547 F.3d at 1100. Indeed, "even the slightest artistic relevance" will suffice; courts and juries should not have to engage in extensive "artistic analysis." Id. at 1243, 1245. Here, six of the nineteen songs on the album make direct use of "mastermind" in the lyrics, and one song, "Thug Cry," even directly references the overall album itself by its title[5]—linking the title to its contents. Declaration of William Leonard Roberts II ("Roberts Decl.") ¶ 2, ECF No. 76; id., Ex. L,

---

[5] The referenced lyrics are: "Mastermind, my 6th LP. Can't believe we did it. Man, I thank everybody that played a part of this. Shout out to my engineer E-Mix. Each and everyone one of you supporters. My fans, 100, muah." Declaration of William Leonard Roberts II ("Roberts Decl."), Ex. L, Mastermind Album Lyrics, ECF No. 76-1.

Mastermind Album Lyrics, ECF No. 76-1.  Moreover,
Defendants have provided evidence of the use of the
term "mastermind" as part of a larger, abstract theme
used by artists in hip-hop claiming to be masterminds
of music.[6]  <u>See</u> Defs.' SUF ¶¶ 22-24; Declaration of
Joshua S. Hodas ("Hodas Decl.") ¶¶ 9-11, ECF No. 75;
<u>id.</u>, Exs. G-I, ECF Nos. 75:7-10.  For example,
Defendants provided references in the press to various
different hip-hop artists as "masterminds" like "hip-
hop mastermind Aubrey 'Drake' Graham."  Hodas Decl.,
Ex. I at 14.  The same use of the term is echoed in the
lyrics of Defendants' album.  <u>See</u> Roberts Decl., Ex. L.

Plaintiff has failed to offer any evidence
demonstrating that Defendants' use of the mark has no
artistic relevance to the underlying work, and
consequently has failed to raise a genuine issue of
material fact.  In the absence of such evidence, and
after considering Defendants' album as a whole, the

---

[6] Plaintiff objects to Defendants' assertions that
"mastermind" has been used widely in monikers by rappers, as song
and album title or lyrics, and in rap journalism, as "lack[ing]
foundation, vague and ambiguous as to 'widely used' and hearsay."
Pl.'s Opp'n to Defs.' SUF ¶¶ 22-24, ECF No. 78-1.  This is one of
twenty-five evidentiary objections Plaintiff makes in Pl.'s
Separate Statement Uncontroverted Facts ("Pl.'s SUF"), and each
one is devoid of any argument.  <u>See</u> ECF No. 78-1.  The Court thus
**OVERRULES** Plaintiff's objections because they "are boilerplate
and devoid of any specific argument or analysis as to why any
particular exhibit or assertion in a declaration should be
excluded."  <u>United States v. HIV Cat Canyon, Inc.</u>, 213 F. Supp.
3d 1249, 1257 (C.D. Cal. 2016); <u>see</u> <u>also</u> <u>Stonefire Grill, Inc. v.</u>
<u>FGF Brands, Inc.</u>, 987 F. Supp. 2d 1023, 1033 (C.D. Cal.
2013)(refusing to "scrutinize each objection and give a full
analysis of identical objections").

Court finds that Plaintiff has not satisfied _Rogers_'
prong one.

### ii. *Prong Two*

The second _Rogers_ prong requires that the use of
the mark not "explicitly mislead[] as to the source or
the content of the work." _Rogers_, 875 F.2d at 999.
The relevant question is whether Defendants' use of
"Mastermind" in their album and tour would confuse the
public into thinking that Plaintiff is "somehow
affiliated with or sponsored by" Defendants. _Cohn_, 281
F.3d at 841.

Plaintiff argues that the title of Defendants'
album explicitly misleads as to the source of the work
because Plaintiff's registration is for musical
recordings—the exact same goods and services for which
Defendants use the mark. Pl.'s Opp'n at 15:1-6.
Further, Plaintiff disputes Defendants' assertion that
nowhere in the title or lyrics do Defendants allude to
Plaintiff by arguing that titling the album
"Mastermind" is a direct reference to Plaintiff
himself. Pl.'s Separate Statement Uncontroverted Facts
("Pl.'s SUF") ¶ 34, ECF No 78-2. While typically the
Ninth Circuit has held that "mere use of a trademark
alone cannot suffice to make such use explicitly
misleading," _E.S.S._, 547 F.3d at 1095, each time it
made that observation, the junior user had employed the
mark in a different context than the senior user. _See_
_Gordon_, 909 F.3d at 270. For example, in _MCA Records_,

14

Mattel's Barbie was used in a song, and in <u>Twentieth</u>
<u>Century Fox</u>, the mark of a record label was used in a
television show.  <u>Id.</u>  The Ninth Circuit opined that
had the junior user in these cases used the mark in the
same way as the senior user, "such identical usage
could reflect the type of 'explicitly misleading
description.'"  <u>Gordon</u>, 909 F.3d at 257.

When the use of the mark is the same between the
junior and senior user, a second relevant consideration
is "the extent to which the junior user has added his
or her own expressive content to the work beyond the
mark itself."  <u>Id.</u> at 270.  "As <u>Rogers</u> explains, the
concern that consumers will not be 'misled as to the
source of [a] product' is generally allayed when the
mark is used as only one component of a junior user's
larger expressive creation, such that the use of the
mark at most 'implicitly suggest[s]' that the product
is associated with the mark's owner."  <u>Id.</u> at 270-71.
The Ninth Circuit compared this to where the use of a
mark "as the centerpiece of an expressive work itself,
unadorned with any artistic contribution by the junior
user," may qualify as explicitly misleading.  <u>Id.</u>
(citing <u>S.F. Arts & Athletics, Inc. v. U.S. Olympic</u>
<u>Comm.</u>, 107 S.Ct. 2971, 97 (1987)).

In <u>Gordon</u>, the creator of a YouTube video known for
its trademarked catchphrases "Honey Badger Don't Care"
and "Honey Badger Don't Give a S - - -" sued a
greeting-card design studio for selling cards using the

phrases with small variations.  909 F.3d at 260-63.
The Ninth Circuit found there was a genuine issue of
material fact as to <u>Rogers</u>' second prong, in part
because the junior user used the mark in the same way
as the senior user.  <u>Id.</u> at 269-70.  The <u>Gordon</u> court
found there was a triable issue of fact as to whether
the defendants simply used the mark with minimal
artistic expression of their own, and in the same way
the plaintiff was using it, because defendants used the
catchphrase without any other text, "knowing that
consumers rely on marks on the inside of cards to
identify their source."  <u>Id.</u> at 271.

Here, in contrast to the defendants in <u>Gordon</u> using
the Honey Badger catchphrase as the "centerpiece" of
their greeting cards, Roberts is using "Mastermind" as
one album title out of six albums throughout his
career—a career which he has established as a renowned
artist under the moniker "Rick Ross".  The word
"mastermind" appears in the lyrics of Defendants' album
nine times across nineteen tracks, and even where the
mark is used, it is through Roberts' own artistic
expression.  <u>See</u> <u>generally</u> Roberts' Decl., Ex. L.
Moreover, Defendants' marketing of the "Mastermind"
album attaches the "Rick Ross" persona and history as
an artist to it.  <u>See</u> Declaration of Raul Caiz ("Caiz
Decl.") ¶ 8, ECF No. 78-4; <u>id.</u>, Ex. B (article titled
"Rick Ross Announces Title of Sixth Studio Album").
While Roberts has used "Mastermind" as a nickname

16

following the release of his album, every instance
where it was used it was accompanied by a clear
indication that it is associated with "Rick Ross". For
example, Roberts' website, [www.rickrossmastermind.com,](http://www.rickrossmastermind.com)
is titled "Rick Ross The Boss" and introduces him as
"Rick Ross AKA Ricky Rozay AKA the Boss AKA The
Mastermind." Declaration of Kris Demirjian ("Demirjian
Decl.") ¶ 3, ECF No. 78-3; id., Ex. J, Rick Ross
website, ECF No. 78-10. See also Demirjian Decl. ¶ 5;
id., Ex. Q, Roberts' Dep. 77-78, ECF No. 78-11
(referring to himself as "the Boss Rick Ross" in
addition to his "many nicknames"). In short,
Plaintiff's music lists the artist as "Mastermind," see
Caiz Decl., Ex. O (showing Plaintiff's EP "Man-Up" by
"Mastermind"), while Defendants titled one of Roberts'
albums and tours "Mastermind," while retaining some
sort of reference to "Rick Ross" as the artist and
incorporating Roberts' own artistic expression.

In response, Plaintiff only provides legal argument
that Defendants' use of "Mastermind" in the same way is
explicitly misleading, but points to no evidence
indicating that Defendants' use even "implicitly
suggest[s]" that the album is associated with
Plaintiff, let alone any evidence of an overt
association. Gordon, 909 F.3d at 271. The only
evidence Plaintiff provides is set forth in Plaintiff's
declaration, stating that his fans and fans of Rick
Ross started asking him if a new album was coming out,

"misleadingly thinking Defendant's album was [his]."
Caiz Decl. ¶ 33.   But Plaintiff does not identify any
evidence to support this statement, and "the mere
existence of a scintilla of evidence in support of
plaintiff's position is insufficient [to deny summary
judgment]; there must be evidence on which the jury
could reasonably find for plaintiff."   <u>Anderson</u>, 106 S.
Ct. at 2512.   Nor has Plaintiff provided any evidence
showing that Defendants have indicated to the public
that Plaintiff is associated with, sponsored, endorsed,
or otherwise is the source of Defendants' album
"Mastermind."   <u>Novalogic, Inc. v. Activision Blizzard</u>,
41 F. Supp. 3d 885, 901 (C.D. Cal. 2013) (citations
omitted) ("To be 'explicitly misleading,' a defendant's
work must make some affirmative statement of the
plaintiff's sponsorship or endorsement, beyond the mere
use of the plaintiff's name or other
characteristic.")).

Plaintiff instead argues that this prong is met
because reverse confusion amongst consumers is
likely—seemingly importing a likelihood of confusion
analysis into the second <u>Rogers</u>' prong.   For example,
Plaintiff cites <u>Wild v. HarperCollins Publrs., LLC</u>, No.
SACV 12-1191-JST (Anx), 2012 U.S. Dist. LEXIS 196356,
at *12-13 (C.D. Cal. Nov. 29, 2012), for its
proposition that the <u>Rogers</u>' test adds the express
qualification that its "limiting construction would not
apply to misleading titles that are confusingly similar

18

to other titles." The Court does not need to follow *Wild*'s reasoning as it is persuasive authority at the motion to dismiss stage, and it does not conduct any analysis as to whether the book titles at issue there are explicitly misleading. Further, *Wild* was decided before the Ninth Circuit clarified in *Gordon* that only where a plaintiff satisfies one of the *Rogers* prongs, must a plaintiff then establish that the use of the mark is likely to cause confusion.[7] *See Gordon*, 909 F.3d at 265. Thus, the Court declines to import a likelihood of confusion analysis into the second *Rogers* prong.

Finally, Plaintiff argues that even if the *Rogers* test protects Defendants' use of the mark for their album name, it has no bearing on Defendants' other uses of the mark for the tour name, and as Roberts' persona in interviews and other live performances. Pl.'s Opp'n at 18. The Court finds this unconvincing because these

---

[7] The other cases Plaintiff cites are equally unavailing. First, Plaintiff cites *Masters* for the proposition that *Rogers* does not apply to reverse confusion cases, which the Court already dismissed. Plaintiff also cites *Watts Health Sys. v. United Healthcare Corp.*, 960 F. Supp. 1431, 1437 (C.D. Cal. 1996), which was decided prior to the Ninth Circuit's adoption of the *Rogers* test. Finally, Plaintiff cites to *VIP Prods., LLC v. Jack Daniel's Props., Inc.*, 291 F. Supp. 3d 891 (D. Ariz. 2018), however, there the district court applied a likelihood of confusion analysis because it previously found that the *Rogers* test did not apply as there was no expressive work. *See VIP Prods., LLC v. Jack Daniel's Props., Inc.*, No. CV-14-2057-PHX-SMM, 2016 WL 5408313, at *5 (D. Ariz. Sept. 27, 2016) ("In this case, the Court finds that the standard trademark likelihood of confusion analysis, not *Rogers*, is appropriate.").

are extensions of the use of the mark in an effort to advertise and market the "Mastermind" album.  <u>See Twentieth Century Fox</u>, 875 F.3d at 1196-97 (finding use of the "Empire" mark beyond the title of a TV show, such as appearances by cast members, radio play, online advertising, live events, and sale of consumer goods, protected because "it requires only a minor logical extension of the reasoning of <u>Rogers</u> to hold that works protected under its test may be advertised and marketed by name, and we so hold.").

In sum, Plaintiff has not pointed to any evidence that creates a triable issue of material fact as to whether Defendants' album "Mastermind" explicitly misleads as to the source of the work.  Because Plaintiff has failed to meet his burden to raise a genuine issue of material fact as to either <u>Rogers</u>' prong, the Court finds that Plaintiff cannot prevail on his infringement claim as a matter of law and **GRANTS** Defendants' Motion.  As such, the Court declines to consider Defendants' remaining defense for fair use, and Defendants' request for summary judgment for cancellation of the mark, including that:(1) Plaintiff failed to meet the notice requirement; (2) Plaintiff used the mark as a signature and not a source identifier; (2) Plaintiff failed to use the mark in commerce in connection with all of the goods listed in Class 009; (3) Plaintiff committed fraud upon the USPTO in obtaining the trademark; and (4) Plaintiff abandoned

the mark.

3. <u>Remaining Claims</u>

In its initial Order, the Court granted summary judgment as to Plaintiff's remaining claims of unfair competition, unjust enrichment, and misappropriation, because each was dependent on a finding of infringement of a protectable mark. Because the Ninth Circuit reversed the Court's cancellation of the mark, these claims are now back before this Court. However, as the Court found that Plaintiff cannot prevail on his trademark infringement claim, the Court again **GRANTS** summary judgment in Defendants' favor as to Plaintiff's remaining claims. <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1153 (9th Cir. 2002) ("dismissing claims under California's [Unfair Competition Law] as 'substantially congruent' to claims under the Lanham Act") (internal quotation marks and citations omitted). <u>Bell v. Harley Davidson Motor Co.</u>, 539 F. Supp. 2d 1249, 1256 (S.D. Cal. 2008) (citing <u>Toho Co., Ltd. v. Sears, Roebuck & Co.</u>, 645 F.2d 788, 791 (9th Cir. 1981) ("Black-letter law holds that California's common-law doctrine of misappropriation does not extend to trademark infringement claims."); <u>McBride v. Boughton</u>, 20 Cal. Rptr. 3d 115, 121 (Cal. Ct. App. 2004) ("Unjust enrichment is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (internal citations omitted).

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion as to all of Plaintiff's remaining claims.

**IT IS SO ORDERED.**

DATED: April 17, 2019          s/ RONALD S.W.LEW

                                              **HONORABLE RONALD S.W. LEW**
                                              Senior U.S. District Judge